PETER H. VAN RIPER v. THE ESSEX PUBLIC ROAD BOARD.

1. An act and its supplement are to be construed as one law, so that the terms of the act may, in their connection with the supplement, have a broader meaning than they originally possessed.

2. An assessment for damages, for land taken to widen a road, includes all damages occasioned by reducing the land so taken to the grade of such road, and, consequently, when the grade of such road was subsequently changed, the damages occasioned by such change were held not to include any but such as arose by the alteration of the road in its entire width from the old established grade to the new grade.

On case certified from the Essex County Circuit Court.

Argued at February Term, 1875, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and KNAPP.

For the plaintiff, *Thomas N. McCurter*.

For the defendant, *John W. Taylor*.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This certified case asks of this court answers to two questions.

The first of these questions is, whether section eleven of the act constituting " The Essex Public Road Board," approved March 20th, 1869, applies to " Bloomfield avenue," which was laid out and constructed pursuant to a supplement to said act, approved February 16th, 1870. (*Pamph. L.*, 1870, *p.* 181.)

The section of the act of 1869 here referred to, contains a provision giving damages to the owners of lands located along the line of the road constructed or widened, arising by reason of the alteration of the grade of such road. The grade of Bloomfield avenue, the road now in question, has been altered, and the damages thereby occasioned have been assessed by the jury on this appeal. The uncertainty with respect to the legality of this action has been caused by a doubt as to the applicability of this section eleven to this case. This doubt has this foundation : The act of 1869, of which section eleven is a part, does not authorize the road board to appropriate, or in any way meddle with a turnpike road ; in all its parts it has reference to the laying out of new roads, or the widening, straightening, and reconstructing of roads in the charge of townships. This, I think, is clear, especially from section six. Therefore, when section eleven provided that " if, in widening, &c., any existing public road, or any part or parts thereof in said county, any alteration of the grade of said road shall be made, the damages," &c., shall be assessed, &c., it is manifest that the roads so referred to were the public

roads embraced within the scope of the procedure instituted by the statute, and that this provision had no relation to turnpike roads. But, although this interpretation is unquestionable, it cannot have much effect in the resolution of the point under consideration, which is with regard to the meaning of this clause in its connection with the supplement of 1870. That supplement, in many material respects, altered the powers originally conferred upon the road board, and the methods of their proceedings. This leading effect was to confine the road board to the construction of six avenues, giving it, as an incidental power, the right to lay out new roads upon the application of the land-owners. But it is obvious that the construction of the enumerated avenues was the main concern of the statute, its modes of action and procedure having primary reference to these important undertakings. With a view of carrying these purposes into effect, the sixteenth section confers the power of taking turnpike roads.

Now, it seems to me that, if we incorporate into this supplementary act the eleventh section of the original act, it will appear that the section has, by force of association, a compass of signification which it did not originally possess. In the primitive act, where its clauses referred to "public roads," they did not embrace "turnpike roads," because such roads were not within the statutory project, while these same terms standing unrepealed, and now applying to a subject comprising turnpike roads, must be construed as extending to them. They are the same terms, but they are applied to a subject more comprehensive than their original subject. In their new connection, the terms, "any existing public road," mean any existing public road which the supplementary act authorizes to be taken in the construction of any of the six avenues; and turnpike roads are of that class. To confine these terms to the roads authorized to be laid on the application of the land-owners, by force of the seventeenth section of the supplement, would be both a forced and narrow construction. All the other retained provisions of the original act relate to this scheme of laying out these avenues, and no

reason appears why this eleventh section should stand as a solitary exception. The natural reading of these acts of legislation, as they are now presented to us, is this: The act of 1870 authorizes the laying out of six avenues; for this purpose, the road board is "vested with all the rights necessary and expedient to survey, lay out, locate, construct, reconstruct, and maintain the said avenues and roads, and to vacate such part or parts of existing roads as may be necessary therefor," and to "purchase or take—(compensation being first made)— any turnpike road in said county; and that, if in the doing of such work, the grades of any of the existing roads so appropriated are changed, compensation shall be made to the land-owners for damages resulting from such change of grade." Manifestly it was the legislative purpose to apply the old procedure, so far as it was left unrepealed, to the new project, and both the original act and its supplement must be construed in the light of this purpose. The legal rule is, that these laws, being in *pari materia*, are to be regarded as a unit, and as constituting one system. *Sedgwick Stat. Con.* 247. Read in this way, I can see no great difficulty in harmonizing the various clauses. Nor have I found any reason to suppose that, putting the construction above indicated upon the eleventh section, there is any practical difficulty in assessing damages arising from the alteration of the grade. They are to be appraised in the same mode as, by force of the supplement, the damages for the taking of lands are ascertained. The suggested difficulty on this head arises from the error already noticed, of looking at this section in its original, instead of in its new collocation.

The second question concerning which the advisory opinion of this court is sought, is with reference to the effect of the award of damages for the taking of the land of the appellants. It appeared, on the trial, that the turnpike in question had been widened, and that commissioners had appraised, in accordance with the act, the damages done to the appellant in the sequestration of his property for the purpose of such extension. From this award no appeal was taken, and the

judge holding the circuit was of the opinion, that the award of the commissioners included all the damages to which the land-owner was entitled, except such as were caused by the alteration of the grade of the turnpike. I see no reason to doubt that this conclusion was entirely correct. At the time of the appraisement by the commissioners, the change of grade had not been made or decided on, and, consequently, the injury from that cause could not be embraced in that estimation. But the act very plainly contemplates, that all other damages are to be ascertained by the commissioners. This is the usual mode of proceeding common to all similar instances. The fifth section of the supplementary act regulates this subject, and it provides, that " the owners of that part of the lands over which said avenues are authorized to be laid, *which is not already in public use,* shall be entitled to compensation for the use thereof, hereby authorized." This compensation, in express terms, is given for the use of such land taken for the avenue which is not in public use. By the eighth section, provision is made for the appointment of commissioners, who are empowered to make a fair, just, and impartial appraisement of the damages sustained by the owner of any lands to whom compensation is to be made. It seems to me undeniable, that this appraisement, when no change of grade is subsequently made, must include all the damages to which the land-owner is entitled. It is settled that these appraisements are conclusive, and, when not appealed from, estop the land-owner from asserting that they do not embrace the whole of his damage. The conclusiveness of such a procedure has been repeatedly adjudged by this court. If, therefore, I could agree with the argument of the counsel of the appellant, that the act contemplates only one appraisement of damages, I should be compelled to conclude that the appellant could not recover in the present suit, on the ground that, by intendment of law, all the damages, of every description, would be definitively held to be comprehended in the first appraisement. But it would be a construction altogether inadmissible, to say that a second

appraisal of damages cannot be made in such an instance as the present, where the grade of the avenue was determined to be altered subsequently to the action of the commissioners in assessing the damages incident to the taking of the land. There appears to be no real obscurity as to the practical operation of the various provisions of these acts on this subject. When land is taken for the widening of an existing road, the land so acquired becomes subject to the servitudes of the road, and, among other liabilities, it can be reduced to the level of the grade of the road, as established at the time. For the application of his land to these uses, and for its subjection to such a liability, the owner is entitled to his compensation in damages. In the present case, the appellant had the right to insist that, on the first appraisement, all such damages should be included ; if he neglected to do so it was his own fault. The present assessment is exclusively for the damages proceeding from the change of the grade of the road. The cutting down of the land taken from the appellant, to the original grade of the road, has nothing to do with such change of grade. That land, at the time the change in the grade was made, was a part of the road, and could be used as such.